In the Matter of the Application of JOSEPH A. BRODERICK, Superintendent of Banks of the State of New York, Appellant, for an Order Approving the Purchase of Certain Stock by JOSEPH A. BRODERICK, for the Benefit of Creditors of the STATE BANK OF CANASTOTA, NEW YORK, in Liquidation.*

A. E. DEW & SONS, INC., and Another, Respondents.

Third Department, May 6, 1932.

*R. R. Calli*, for the appellant.

*Coley & Kiley* [*Edward A. Kiley* of counsel], for the respondent A. E. Dew & Sons, Inc.

*Clarence E. Conley*, for the respondent Claude B. Ellis.

*Carl J. Austrian* [*Arthur Ofner, Warren C. Fielding* and *Charles F. Preusse* of counsel], for Joseph A. Broderick, as *amicus curiæ*.

RHODES, J. On the 19th day of December, 1930, the State Bank of Canastota was taken over by the Superintendent of Banks for the purpose of liquidation. The bank held certain promissory notes made by one Claude B. Ellis on which there was due $18,886.26, with interest, to secure the payment of which the bank held as collateral security 320 shares of the common stock of the A. E. Dew & Sons, Inc., and 65 shares of the common stock of the Worlock Stone Company, Inc. In the process of liquidation demand was made upon the maker of said notes for payment, but payment was not made and thereupon the said stock was advertised for sale after notice to the parties interested, which sale was held at public auction on August 1, 1931, and the 320 shares of common stock of A. E. Dew & Sons, Inc., were bid in in behalf of said Superintendent of Banks for the benefit of creditors of said

bank for $19 per share, and the 65 shares of common stock of the Worlock Stone Company, Inc., were likewise bid in for the sum of $20 per share. Thereupon application was made to the court at Special Term for an order confirming said sale, which application was denied, and from the order refusing such application this appeal is taken.

The order does not state whether the denial is as a matter of discretion or as a matter of law, but in the opinion of the court below wherein the subject is fully and thoughtfully discussed, it is suggested not only that the confirmation sought is not advisable, but particularly that the Superintendent of Banks has no authority under the Banking Law to make such purchases. While we appreciate the cogency of the reasons advanced in the opinion, we think the statute must be given a broader interpretation. Section 69 of the Banking Law provides in part that " The Superintendent is authorized, upon taking possession of the property and business of such corporation * * * to liquidate the affairs thereof and to do all acts and to *make such expenditures as in his judgment are necessary to conserve its assets and business.* * * * He may upon an order of the Supreme Court, sell or compound all bad or doubtful debts held by, and compromise claims against such corporation * * * other than deposit claims, *and, upon such terms as the court shall direct, may sell or otherwise dispose of all or any of the real or personal property of such corporation* * * *.''

The Superintendent of Banks, acting as a statutory receiver, is an administrative officer. (*Matter of Union Bank,* 204 N. Y. 313; *Richards* v. *Robin,* 178 App. Div. 535.) He is clothed with all the powers and duties of a receiver, and upon taking possession and control of the property and business of a bank, he becomes in equity the owner of its property. The only title which remains in the bank is merely formal and is held in trust for the Superintendent. (*Lafayette Trust Co.* v. *Beggs,* 213 N. Y. 280.) The Superintendent is of the administrative, not the judicial, branch of the government. His possession is statutory and not that of the court. The liquidation is not the result of any action or proceeding in court, but is pursuant to the statutory power conferred upon the Superintendent. He, not the court, is authorized to sell or otherwise dispose of the property of the bank. (See *Matter of Union Bank of Brooklyn,* 176 App. Div. 477, where it is said: " It is not for the court to set itself above the judgment and discretion of administrative officers to whom the law commits a decision, for thereby the court but confronts its opinion with his opinion.'') The court may not substitute its discretion for his own where the statute leaves discretion to him. (*Isaac* v. *Marcus,* 258 N. Y. 257.) The language of section 69 is certainly broad enough by its terms to permit the

action desired to be taken by the Superintendent. It permits him " to do all acts and to make such expenditures as in his judgment are necessary to conserve its assets and business." In the present case the attorney for the Superintendent insists that the proposed purchase of the stock does conserve the assets and business of the bank, because it is pointed out that at the sale the initial bid was five dollars per share for the A. E. Dew & Sons, Inc., stock; that by reason of the bidding in behalf of the Superintendent, A. E. Dew, the father-in-law of the debtor, bid eighteen dollars per share and it was finally struck off to the Superintendent for nineteen dollars per share, and that as to both said stock and the stock of the Worlock Stone Company, Inc., the bids were authorized by the Superintendent; this indicating, according to the argument of the appellant, that the Superintendent, in his judgment, believed the stock to be worth the amount bid for it. It is evident that if the Superintendent has not power to bid in stock thus held as collateral, he is placed in the position of standing helplessly by and witnessing the sale at a price far below its value and thereby may be prevented from conserving the bank's assets. It was suggested by the court below that if on such a sale the amount realized proved to be unsatisfactory, a resale might be ordered. We think, however, that under the authority of the statute, the Superintendent had power to bid the stock in, if, in his judgment, he deemed best.

By the terms of the collateral agreement by which the bank held the stock, it was provided that the bank might sell the said collateral at public or private sale and that said bank might become the purchaser of said collateral on any such sale. Why should the Superintendent, standing in the place of the bank, acting in its behalf and in behalf of its creditors, be prevented from doing what the bank had a right to do in the purchase of said collateral, if, in the judgment of the Superintendent, such purchase would tend to conserve its assets and business? The broad language of the statute should not be so construed as to limit the discretionary powers conferred upon the Superintendent in the absence of a clear indication of such an intent on the part of the Legislature. No such legislative intention seems apparent.

It must be assumed that the Superintendent acted in good faith and upon sufficient reasons. (*People ex rel. Lieberman* v. *Vandecarr*, 175 N. Y. 440, at p. 446, where it is said: " It is presumed that public officials will discharge their duties honestly and in accordance with the rules of law.")

It may be asked if there is any reason why the Superintendent should be required to apply to the court for permission to make the purchase if he has authority so to do in the exercise of his

discretion. The answer is that the application is made to the court for the purpose of enabling it to determine whether or not the proposed action is within the power of the Superintendent, and whether or not he has abused the discretion imposed in him. Within the limits of this controlled discretion, the determination of the Superintendent is not subject to interference by the court.

The Superintendent, as we view it, having authority in the exercise of discretion to purchase the collateral, and there being nothing in the record showing an abuse of such discretion, the application should have been granted.

The order appealed from should be reversed upon the law and facts, with costs, and the motion granted, with ten dollars costs.

All concur.

Order reversed on the law and facts, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.